Blakeslee's Express & Van Co. v. Ford.

---

## Blakeslee's Express & Van Co. v. Kittie Ford, Adm'x.

1. PRACTICE—*Where Two Juries Have Found for the Plaintiff.*— Where two juries have found for the plaintiff upon a question of fact and the verdict is not manifestly and clearly against the weight of the evidence it will not be disturbed.

Trespass on the Case.—Death from negligent act. Appeal from the Circuit Court of Cook County; the Hon. EDMUND W. BURKE, Judge presiding. Heard in the Branch Appellate Court at the October term, 1901. Affirmed. Opinion filed February 13, 1903.

O. W. DYNES, attorney for appellant.

BENSON LANDON and B. C. BACHRACH, attorneys for appellee; WILLIAM S. FORREST, of counsel.

MR. PRESIDING JUSTICE WATERMAN delivered the opinion of the court.

This action was brought to recover damages arising from the alleged negligence of appellant whereby the death of one George Ford was caused. The case has been three times tried. Upon the first trial the judge therein presiding instructed the jury to return a verdict of not guilty. Thereafter the same judge set aside such verdict and a second trial was had resulting in a verdict of guilty with assessment of damages at the sum of $3,500. Judgment having been entered upon this verdict an appeal was taken to this court, wherein that judgment was reversed and the cause remanded. The third trial resulted in a verdict of $3,500 for the plaintiff, from the judgment upon which this appeal is prosecuted. The principal question of fact in controversy is whether an express wagon belonging to appellant proceeding eastward on Washington Boulevard, just before the accident, when nearly opposite Page street, crossed from the north to the south side of the boulevard, and as it approached the southern side, suddenly swung westward so that the tongue of said wagon came into collision with the breast of the deceased, who was riding a bicycle going eastward upon Washington Boulevard. Appellant contends that the collision occurred upon the north side of the boulevard; that the deceased was proceeding eastward upon the north, or to him the left hand side of the boulevard with his head down; that he was seen by the driver of appellant's wagon, and an attempt made by swinging his horses from the direct course in which they were going to avoid injuring the deceased, but that in spite of the effort of

appellant's driver, the deceased rode against the tongue of appellant's wagon, striking its tongue after the wagon had come to and was at a stand-still.  As to the various contentions of the parties the evidence was irreconcilable.

A Miss Hooker, a witness for the plaintiff, living and being in her house on Washington Boulevard, about seventy-five feet from Page street, saw the accident and testified that the deceased was going east on a bicycle on the south side of Washington Boulevard; that appellant's wagon was going west in about the middle of the boulevard; that it started to turn at Page street and that the deceased started to go back of the wagon; that the wagon turned and the pole struck him; that the horses drawing the wagon were trotting at the time they swung to go south on Page street and she thinks the wagon was moving at the time the pole struck the deceased; that the wagon at the time of the accident was on the south side of Washington Boulevard; that the deceased was five or ten feet west of Page street and three or four feet from the south curb on Washington Boulevard at the time the wagon pole struck him; that he was going slowly at the time he came in contact with the pole of the wagon.

A Miss Marshall, who lived on Washington Boulevard about one hundred feet west of Page street, saw the accident, being seated at the time in a wide window seat in a front widow of the second story of the house in which she was then living, such house fronting north.  She says that at the time of the collision the horses of appellant's wagon were going at a slow trot.  Her testimony as to the circumstances attending the accident is substantially like that of Miss Hooker.  She also testifies that the pole of the wagon when it struck the deceased knocked him off his wheel and carried him, perhaps, five or ten feet.  As to the distance which he was carried she expresses herself as uncertain and states that to her best judgment the deceased must have been about five, possibly six feet away from the curbstone on the south side of Washington Boulevard and about five or six feet west of Page street.

A Mr. Henry testified that he saw the accident, being then on the north side of Washington Boulevard, between Page and Wood streets; that appellant's wagon had been going westward on the north side of Washington Boulevard; that the team turned south toward Page street and then swung west on Washington Boulevard; that when the wagon pole struck the deceased he was about three feet from the south curb of Washington Boulevard; that the horses were trotting; that he was shoved back by the collision, he could not tell how far; that before the collision the deceased's head was in an ordinary position.

A Mrs. Evans testified that she was then living in a house fronting north on Washington Boulevard, about eighty feet from the corner of Page street; that she at the time of the accident stood in a window of the second story of her house, looking to the north; that the deceased was going east on the south side of Washington Boulevard, very close to the curb, and proceeding at a moderate rate of speed; that the wheels of appellant's wagon, when it stopped, were about two feet from the south curb of Washington Boulevard, the horses pointing westward; that the deceased, after the collision, gathered himself, walked to the north side of the street and fell over.

On behalf of the defendant several witnesses, including those in the service of appellant, more in number than those testifying in behalf of the plaintiff, testified that the deceased at the time of the collision was on the north side of Washington Boulevard, proceeding eastward with his head downward, and that the collision occurred on the north side of the boulevard. The driver of appellant's wagon testifies that when he first saw the deceased he was close to the curb on the south side of the street; that the deceased approached Page street about the middle of the block, crossed over as though he was going to go in along toward the other curb (which would be the north curb); that the deceased pulled over toward the north curb and he, appellant's driver, swung out to give him a chance to get inside, provided he wished to; that when appellant's

Blakeslee's Express & Van Co. v. Ford.

wagon made its first swing it was about forty feet west of Page street; that after appellant's wagon swung then the deceased swung back again; and then appellant's wagon was swung and the deceased swung, and .that brought appellant's team to a stand-still, and the deceased struck the pole of the wagon.

If the deceased was, just prior to the collision, proceeding eastward on the south side of the boulevard, he was riding in his proper place, and if at about Page street the driver of appellant's wagon proceeding westward on the boulevard swung his team to the south, it was his duty to have done so with care for the safety of persons going eastward on the boulevard who might not be aware of such intention to cross it.

The ultimate question of fact as to whether the accident was the result of negligence by appellant, and whether the deceased exercised ordinary care, was for the jury to decide. Upon this question two juries have found for the plaintiff. If, upon the record here presented, we found the verdict, now under consideration, was manifestly and clearly opposed to the evidence, it would be our duty to set it aside. While the record leaves us in doubt as to what the circumstances were under which the accident occurred, and we do not feel confident that the preponderance of the evidence upon the issue presented to the jury was with the plaintiff, we are not able to say that the verdict was the result of passion or prejudice, or an entire misconception of what the evidence discloses.

It is true, as is urged, that this court can not sit to review its own decisions. If the present hearing were upon the record heretofore to this court presented, we should necessarily render the judgment given when the case was here before. The record is not the same; other and additional witnesses testified upon the last trial. Undoubtedly, as appellant insists, appellant can not be found to have been negligent without such finding necessarily involving the conclusion that its servant, the driver of its wagon, was negligent. Under the evidence he clearly was not more

than this; he had no intention to injure the deceased. The verdict of the jury is not a finding that appellant's driver was guilty of wanton or willful misconduct, while it is to the effect that he handled his team in such a negligent manner that thereby, without intention on his part, the accident to the deceased was brought about.

Finding in the record no error requiring a reversal of the judgment of the Circuit Court, it is affirmed.

Mr. Justice BURKE took no part in the determination of this case.